First case this morning is People v. Davis. It's case number 4110305 for the appellant, Jane Raley. Did I pronounce that correctly? And for the appellant, Amy Johnson. Good morning, your honors, and may it please the court. When this court first looked at this case 30 years ago, it recognized that the evidence against Andre Davis was circumstantial and that much of it was in conflict. We stand here today with stunning new DNA evidence that completely changes the evidentiary landscape of this case and blows the state's original theory out of the water. The new DNA evidence suggests that Andre Davis is innocent and it points the finger directly at Maurice Tucker and one other unknown male as the perpetrators. Our newly discovered DNA evidence certainly entitles Andre Davis to a new trial and that is what we are requesting. Our newly discovered DNA evidence makes a double point in this case. First, it shows that the semen stains used against Andre Davis at the original trials do not belong to him. And second, and more importantly, it shows that the semen found at the crime scene was not old semen. It was semen that was an artifact of the crime. And in this case, the crime was a sex crime. It was the rape and murder of three-year-old Brianna Stickle. And it was the state's theory at trial that Andre Davis and Brianna Stickle. Our newly discovered DNA evidence shows that that semen that was on the bed was left by two perpetrators, one of whom was Maurice Tucker. It was the state's theory at the trial that the semen on the bed was related to the rape and murder of Brianna Stickle. That's where she was found and it was argued that that's where the crime occurred. And the state went to great lengths at trial by calling witnesses to establish that that semen was part of the crime and that Andre Davis could be connected to the semen. Four witnesses testified to the presence of wet stains on the bedding on which the victim was found. The pathologist told the jury that not only did he find sperm inside the vagina of Brianna Stickle, but that the vaginal canal of the three-year-old is very short and that semen would leak out. And finally the prosecution presented at trial the testimony of an FBI agent who testified that he looked at the stains on the bedding, he found semen, he found blood. The semen came from a non-secreter and Andre Davis was a non-secreter and non-secreters made up 20% of the population. So to sum it up, it was a very important part of the state's case to connect Andre Davis to this bedding, to the scene, and they did this by suggesting that the semen on the bed was related to the crime and that Andre Davis was related to the semen. And we now know, thanks to the gift of DNA, that the semen stains used against Mr. Davis at trial do not belong to him. They belong to Maurice Tucker. So in essence the jury in part convicted Andre Davis on what we now know to be a false inference. And we believe that this point alone entitles Andre Davis to a new trial. But our DNA evidence establishes much more than this. It's much more powerful than this. If Mr. Davis were accorded a new trial, Dr. Edward Blake, who is one of the preeminent DNA experts in the world, would testify that two men, neither of whom was Davis, and one who is Maurice Tucker, left semen deposits on top, on top of Breonna Stickel's blood. And that these semen stains are found on top of Breonna Stickel's blood compels the conclusion that the semen belongs to the perpetrators and that it's related to the crime. There is no other explanation for this phenomenon other than the semen was deposited after the victim began bleeding. In the court below, the state stipulated that the semen deposits from both Maurice Tucker and another unknown male, number two, were found on top of Breonna's blood. That was stipulated to. And they also stipulated that these semen deposits could not have been transferred to their present location from pre-existing semen deposits. Our new DNA evidence also reveals that toilet tissue that was found mixed in with the sheets that had blood on it belongs to Maurice Tucker. And this is significant in light of the fact that there was evidence of a break-in at the time of the crime. There was a window that was smashed in, in the bathroom of this house. And there was evidence that Maurice Tucker's brother was the only one who had the key. Our new evidence also reveals that semen stains that are found on other parts of the bedding, a fitted sheet and a white sheet, are mixtures of DNA from both Maurice Tucker and Breonna Stickel. Maurice Tucker is all over this bedding. Andre Davis is nowhere to be found on this bedding. Our newly discovered DNA evidence is compelling. It's not controverted. And so the question before this court today is, had the jury heard that the semen deposits mixed and layered on top of the victim's blood located on the bedding where the victim was found do not belong to Andre Davis, and in fact belong to Maurice Tucker who testified as a state witness against Andre Davis? So how did the trial court get it wrong? I assume these arguments were made to the trial judge. The trial judge found the newly discovered DNA evidence to be compelling. And the trial judge found that it inculcated Maurice Tucker, but it found that it did not necessarily exculpate Andre Davis and suggested that perhaps Andre Davis could have been involved in the murder, but perhaps not the rape. And so what the lower court did... Is that a reasonable conclusion for the trial court to reach? That might be a reasonable conclusion at a new trial for a jury to make, but not for the lower court below. The lower court below is completely changing the theory as to what happened at trial. This was not the theory under which Andre Davis was prosecuted. He was prosecuted as a single perpetrator, somebody who committed the rape and the murder. And the question before the judge is not whether Andre Davis would... Is innocent or guilty? That's not the question. The question is, is there a reasonable probability that had the jury heard this information, they could reach a different result? And the answer to that question has to be yes under these circumstances. It has to be yes. The state relied on three pieces of evidence in convicting Andre Davis of this crime. The serological evidence, which we've already talked about, which no longer exists. Dr. Jose Raquel's testimony and Donald DeRose's testimony. With regards to Dr. Jose Raquel, he testified that he found fecal material underneath Mr. Davis's foreskin, which was consistent with the presence of feces that was found on little Brianna. That finding that he made was thoroughly impeached at trial. Because the material that he removed from Andre Davis's penis was put into a culture and it did not grow what it is supposed to grow had it been feces. So that testimony was impeached. With regards to Donald DeRose's testimony, and I think that that was the main evidence against Andre Davis. Donald DeRose is one witness and his testimony does not explain away the DNA evidence and it is inconsistent with the DNA evidence. Donald DeRose was a suspect in this case. He was the one who was found snooping around the house at the time that Brianna's parents were looking for little Brianna. He was taken to the station house for questioning. His hairs were taken. He was a suspect. He knew he was a suspect. And it's very possible that he gave this statement. He gave a statement saying that Andre Davis confessed to him. And it's very possible that he gave this statement in order to deflect attention away from himself. I'm not suggesting that Donald DeRose committed this crime. We took a DNA sample from him and evaluated it and Donald DeRose is not unknown male number two. But Donald DeRose could have been protecting himself. He could have been protecting somebody else. He could have been protecting Maurice Tucker. They were friends. The fact of the matter is that Donald DeRose is one witness and a jury is going to have to evaluate. Are we going to believe Donald DeRose? Are we going to believe this scientific evidence? And that's a jury question. And it's not my burden and I think that this is where the lower court got it wrong. It's not my burden to show that the jury would in fact find Andre Davis not guilty. They might find him guilty, but they certainly could find him innocent in this case. Put yourself in the position of a prosecutor going forward at a new trial with this evidence. You would not be confident that you could get a jury verdict. Especially when one of the state's witnesses, Maurice Tucker, who testified against Andre Davis, I think now we can show he lied at trial. He said that he left his house with others at about 6 o'clock and did not return until he was informed of the crime. He said he left with Ida Parker. With Ida Parker, yes. Did Ida Parker testify? Ida Parker did. And did she confirm that? She did. And Ida Parker is no longer living. He though, now, his evidence, it could be argued, that he made to the police and he testified at trial. His statement was a false exculpatory statement. And that could be used at a new trial. Andre Davis could present that evidence as evidence of third party guilt. So, if there were to be a new trial, the evidence has changed completely. And again, back to my point, a prosecutor certainly would not be confident that you could get a guilty verdict with this evidence. And had this evidence been available back in 1980 when this happened, I don't think Andre Davis would have been the one charged. I think Maurice Tucker would have been charged. And to this day, to the best of my knowledge, Maurice Tucker has not been questioned. His DNA has been taken. But he's not been questioned. He's not been arrested. And he's not been held accountable for this crime. I take it that he was questioned at the time. He was questioned at the time. But you mean, when you say questioned, he's not... Yeah, yeah. And I say that just... This DNA evidence is so compelling. And it is... When you look at it, it's just perplexing to me as to why Maurice Tucker is not being looked at right now. I want to make the point that not only is the state's case at a new trial going to be completely marginalized and weak in light of this newly discovered DNA evidence, much of the evidence presented at the trial originally pointed guilt away from Andre Davis. And I want to talk about that for a moment. Andre Davis was arrested that night within hours of this crime having occurred. And he was taken down to the station house. And they swabbed his penis. And they swabbed his legs and his thighs. Because there was a lot of blood and semen at the crime scene. There was no blood and no semen that was found on his penis, on his legs, anywhere on his body. And apparently there was grass that was found in his groin, which suggests that he did not clean himself before he was taken down to the station house. As you will recall from the evidence, he was very drunk that night. And he was sitting at Donald DeRoe's house until Donald DeRoe came home. So we have this evidence that there is no semen or blood that is found on Andre Davis. They looked at the pants he was wearing at the time, some maroon dress pants. There was no blood that was found on the dress pants. There was no blood that was found on the jeans that they claimed that he was wearing. And then he left at the crime scene. There were hairs that were removed. Negroid hairs that were removed from the victim at the time of the autopsy. Those did not compare to Andre Davis. And then there was an eyewitness who testified that he saw somebody at about 7 o'clock suspiciously leaving the Tucker house. He was shown a lineup and Andre Davis was in that lineup. He said he thought he would be able to recognize who it was and he did not identify Andre Davis. Is there any dispute that the jeans found at the crime scene belonged to the defendant? No, there is no dispute about that. The jeans belonged to... But again, the evidence that makes the jeans evidence against Andre Davis comes from Maurice Tucker. Ida Parker testified that when she saw Andre Davis leave the Tucker house he was wearing the maroon dress pants. And so the testimony that puts Andre Davis in jeans when he left the house comes from Maurice Tucker, somebody we now know is complicit in this crime. And again, a jury would hear that. Again, I think the issue before this court is not whether Andre Davis is guilty or innocent. That is a question for a new jury. The question for this court is whether the trial court abuses discretion. Is it not? I disagree. I think that this court should not be looking at this case from an abusive discretion standard of review. I believe that this court should be looking at this case de novo. And the reason for that is that Judge Leonard was not the original trial judge in this case. And so he never heard any of the witnesses testify. And the evidence below was stipulated to by the parties. He never heard any witnesses testify. No credibility determinations had to be made. And so in that situation you are in just as good a position as Judge Leonard to weigh the evidence and decide the critical question, would this evidence have made a difference? And so I would ask this court to review this de novo. So he weighed the evidence, which typically makes it abuse of discretion, but he doesn't weigh the evidence with any greater insight than a reviewing court would have. That's correct. That's correct. And he weighs it differently than a jury. A jury is going to ultimately decide guilt or innocence. He's deciding the threshold question. Is this evidence significant enough? Did it change enough of what happened at the trial that we must go back and give it to a jury? One of the things that interests me is the language that's sometimes used in a different context of undercutting faith in the jury verdict. Does that spill over into this, the cases that talk about, there probably would be a different result, which sounds like preponderance of the evidence almost. Yes. Which when countered with the possibility of what might be viewed as inculpatory statements or a confession, or something like a mini-confession, you could see a judge, it's not more probably true than not that a jury would return the other verdict. But if you use the language, it undercuts our faith in the verdict of the jury. It seems different. Did you run across cases that used that language in this context? Yes, I did. Yes, I did. You have more time. And I believe that there might be language in the Benny Starks case, which was a case that's very, very similar to this case, in that there was serological evidence that was used against the defendant. And there was a lot more evidence against Benny Starks than there is against Andre Davis. Evidence that was inculpatory in the Second District Appellate Court said that this has to go back for a new jury trial. And I believe that there was language in that case that talked about how the new evidence affected the integrity of the jury verdict. And then there are some other cases, not necessarily 2-1401 cases, that talk about the cases where somebody is bringing a claim of actual innocence under the Post-Conviction Hearing Act, that use this language that you're referring to. Now, let's suppose for the moment that we were to disagree on the standard of review. If it is abusive discretion, why is it an abusive discretion? For the same reasons that I've stated here today, that this evidence is compelling. This evidence is not only saying that Andre Davis is excluded, it is evidence saying this is the perpetrator. This is the perpetrator. And we just had the Juan Rivera case that perhaps you've been reading about over the last week. He recently, his case was reversed on reasonable doubt grounds by the Second District Appellate Court, but he was granted a new trial on a 2-1401 petition. And there was evidence that he gave a full-blown two confessions to the authorities, detailed confessions. Counsel, you're out of time, but you'll have rebuttal. Thank you. May it please the Court. I would like to begin by saying the trial court did not get it wrong, and I believe this is an abusive discretion standard. I argued in my brief that Paul is a Supreme Court case that specifically rejected the argument the defendant makes here, that if there is no credibility determinations to be made, and if the underlying facts are not in dispute, then a 2-1401 should be reviewed de novo. And the Supreme Court said no, excuse me, that the ordinary standard of review is an abusive discretion. And I recognized in my brief that Vincent was decided after that, and that Vincent did recognize an exception to the abusive discretion standard. But that exception does not apply to the cases here. Vincent was very clear that de novo review is appropriate when the Supreme, when the appellate court, reviewing court dismisses a 2-1401, let me get this right, when the trial court dismisses a 2-1401 motion, or when the trial court grants or denies the 2-1401 motion based solely on the pleadings. The Supreme Court was clear those were the only circumstances that Vincent applied to. So, with that clear language, and with the fact that the Supreme Court had decided Paul the prior year, and no more recent rulings on that, Paul stands as the precedent, and it is an abuse of discretion standard. Despite this limited application of Vincent, and despite the authority of Paul, the defendant here has argued that due to a stipulation, and this is the way I interpret the argument that was made, due to the stipulation of the DNA evidence in the proceedings below, that somehow that removed the trial judge's right to make credibility determinations or look at the facts. Yeah, but that's exactly why we don't typically make, you know, in the ordinary run of events, we don't know these witnesses, we didn't see and hear them testify, and neither did Judge Leonard. Correct, but Judge Leonard did hear much more testimony than we will have here about what the trial evidence itself was, and again, the standard still is abuse of discretion. He heard, first, the stipulation only addressed the DNA evidence, I want to be clear about that first. The stipulation addressed the analysis of the DNA evidence, and the state is not contesting that the DNA evidence shows, defendant's DNA is not on the materials that were tested. There is no question about that. But, I think that defense counsel is being a little disingenuous in briefs to suggest that that is the only evidence that was at issue. It wasn't, and defense counsel in the proceedings below, on more than one occasion, said, I'm asking the court to take a comprehensive, quote, undertake a comprehensive review of the evidence presented at trial, and that's an honest statement of what this motion actually even legally required of the trial court. The court was not allowed to just look at this DNA evidence abstractly and in a vacuum. It was required to look at it in light of all of the other evidence that was presented at trial. And in light of all of that other evidence, the trial court made its finding, and it was not, in the state's opinion, an abuse of discretion, and again, the state believes that was the appropriate standard to judge it by. Well, if I'm sitting there as a trial judge, I have to ask myself the question, how does the mixed and layered, how does the semen of Maurice Tucker get on top of blood from the victim? And I think it's obvious in the trial court's ruling. The trial court asked that question. Well, maybe somebody messed up the bedclothes, or we don't know how they were removed, or was that argued? The trial court recognized that that was the dilemma. That based on the stipulation, which was, again, based on the evidence of the experts, or the testimony and opinion of the experts, they append that the bloodstain had to happen at the time of the rape, or it had to happen contemporaneously with Breanna bleeding herself for that to happen. But the trial judge recognized also that he had to look at this again in light of the other evidence. And the trial judge also recognized significantly that the jury returned a general verdict of guilty here. The defendant was charged with five counts of murder. The first four involved murder based on a different forcible felony. But the fifth one was that the defendant suffocated Breanna, knowing that those acts would cause, most likely, the death. Now, all the evidence today, or all the arguments today, and everything in the brief has strictly addressed this DNA evidence. But the suffocation and the evidence of that was significant, and it's completely separate and not undermined by the DNA evidence at all. So, except that, the jury was presented with a rather powerful theory of the case. Correct. And the case even concludes with the prosecutor saying, he raped and murdered that little girl. Correct. And based on the evidence that they had at the time, that was... Well, I'm not faulting the state for thinking that was the... And I understand that, but I don't want to just sweep to the side the fact that one of the theories on which this general verdict of guilty was made, and standing alone, if evidence on that issue alone, the suffocation was sufficient, the defendant has not overcome one of the theories that was presented at trial, and that still continues to support the conviction, despite the DNA evidence. And the evidence of that was significant. Not the least of which is the defendant's confession. The defendant confessed to Donald Duro. And when he did so, yes, he said it was a woman and not a child. When he was later confronted with that statement, his rather flippant comment was, well, too late for that. Got to help me get out of here. But when he made this confession, which did not involve any part of a sexual assault, he specifically identified the room where the child was found. He specifically identified hearing, or recalled hearing knocks on the door, which was corroborated with the testimony of Rand Sprague, who was the child's stepfather, that he had been at the house, knocking on the door, because he heard music, believed somebody was in there. He specifically stated to Duro that he suffocated this person, that he did it after hearing knocks, and this person was starting to scream and try and attract attention to get some help. So while there's a suggestion that the state is overstating the value of this confession, the fact remains it is corroborated by other testimony that was put into evidence at trial. And the fact remains that nowhere was this evidence contradicted. The jury heard all of this, and the corroboration remains unassailable by the DNA evidence. And it is completely apart from the sexual assault. Whatever emphasis can be put on the DNA evidence of the sexual assault, this evidence of the suffocation stands clear, and it is sufficient to support the trial court's finding that he simply did not overcome the theories presented by the state, and he did not overcome them to the point that a new trial would likely have a different result. A defendant also admitted to an FBI agent that it was possible that he killed a three-year-old. He made comments to several law enforcement officers, and the one law enforcement officer indicated that he himself at the time of the interview was not aware of the age of the child, and yet defendants said that he knew the child to be between two and seven, he knew it was a white child, he knew that the crime involved a rape, and yet all the law enforcement officers who testified said, we did not tell him that it was a rape, we did not tell him it was a white child, we did not tell him the age of all of this, and yet defendant knew this. Again, the DNA evidence is going to change that. I thought one of the officers told him he was under arrest for rape prior to him making the statement. And I apologize if my recollection is incorrect. I thought the testimony from that officer, which I believe is the officer who has since passed away, was that he was simply there to arrest the defendant. I didn't recall that he had said. But let's say that he said it was for rape. He still did not testify as to the age. He didn't testify that it was a child. There were other things that, again, the DNA evidence does not call into question. The defendant had scratches. There's a lot that's been made about the fact that there was no blood and the issue of what was that the swabs and the washes of the penis all came back clean. But he had scratches on his side, on his thigh. Defendant couldn't give a clear answer as to how he got them. He said he got them wrestling. Then he said, oh, I'm too old to wrestle. And then he went back to, I got them wrestling. And I think he ended up by saying, I don't know how I got them. I thought there was some evidence that he was climbing a tree to pick apples to make wine. Could have got the scratches doing that. That was not an explanation that I recall the defendant ever offered. And Donald testified that when he got to his house, he saw defendants lying on the ground under a shrub. And this is when Donald originally came home and he approached him and said, what are you doing? And the guy said, well, I need to get into your house. But he forgot to mention that to the police. That was not mentioned until the trial. I believe that is correct. I believe that is correct. First trial or second trial? Both. The grass that was found on him is also significant because there was grass found in the bed of Brianna, or where Brianna was found. And I know that. But it's also significant that it seems to suggest he didn't clean himself off and nothing was found when he was inspected. It's also possible that he cleaned himself off and then later again got that grass. I mean, I recognize that there are inconsistencies. I can't stand here and suggest that there aren't. There are inconsistencies. But it was the trial court's job to put all of these together and to come up with an answer and to find whether this court's responsibility, again, is to find whether it was an abuse of discretion. I know that we have suggested and that the defendant has minimized the fact that the defendant could have been wearing a condom. The state is of the belief that this is not truly exculpatory. The DNA evidence is not truly exculpatory evidence because he could have been wearing a condom. So if he was wearing a condom, then it's for sure that the fecal matter isn't fecal matter, which has already been impeached anyway. Actually, it's not. It's not because that could happen anyway. The condom, it had to come off, I would suggest came off at some point. And when there was fecal matter found on the wall and several other areas of the bedroom, there was some found smeared on the wall, I would suggest that the defendant could have come in contact with it in several different instances. He really cleaned himself up awfully well, though. I would seem to suggest. No blood, no fecal matter other than the fecal matter that turns out not to be fecal matter. No semen. Nothing on the jeans, nothing on the dress pants. The timeline isn't such that he had the opportunity to take a full-blown shower. There's also no contradiction to the fact that his penis was traumatized. Two different doctors testified that it was traumatized, that the trauma could not have come from masturbation, that it came from close and repetitive contact with a very tight or small area. So that's something else that gets thrown in there in the mix. You're right, there wasn't blood found, there wasn't semen found, but there certainly was trauma, and the one doctor said it had to also, the trauma would have resulted from at a time when the penis was erect. It's not something that could have occurred any other way. You make excellent points, but I keep thinking to myself that these are the kinds of things that ought to be for the jury, that ought to be for a jury, which leads us back to what Ms. Railey wants, and that's a new trial. Respectfully, these were already presented to the jury. Everything except the DNA. Yeah, well... The jury was presented... Everything except the DNA and the fact that the guy who owns or rents or owns the house who has an alibi provided for him by someone else is the guy whose semen is in the bed. Correct. And that it's not old. No, but that... And there's no testimony about them having activity there that day, intimate activity. They didn't have women in and out of the house, or at least if they did, we don't know that, or activity with each other. It came from somewhere, and it's on top of the blood. It doesn't dispute any of that. Right. But again, even as compelling as you might find that DNA evidence to be, it does not exist alone. You cannot separate it out from all of this other evidence. Which is one of the reasons that I began asking about that other language, because it seems to me that it really does change the focus. If instead of saying, probably, results in a different verdict, you say, this new evidence undercuts our faith in the jury verdict. Not that it destroys it, but that it undercuts it, and it calls into question the integrity of a system where a theory of a case is a rape and murder. Now, I understand what general verdicts are, but it would be disingenuous for you to suggest that the case was really tried by the state, just, you know, here's all the evidence, jury, think what you want. They wanted them to focus on the rape of a child. By this bare-shirted, half-drunken mope, who also happened to be black. Who also happened to have a traumatized penis. Yes, he did. Who also happened to confess to it to multiple people, whose confessions were corroborated by other witnesses. Which is this, balancing. And again, based on the balancing, the trial court found that this evidence would not result, would not likely result in a different outcome, should a third trial be given. So I'm trying to hone in on this standard of review. We've got abuse of discretion. Justice Connett has asked some interesting questions about what probably the outcome would have been. Is it, is our standard as a review court would be as follows? Could a reasonable judge have concluded the new evidence would probably not have produced a different outcome? No, I would disagree. That's not it? I would disagree with that. Because I don't quite follow what it should be. I would say it's whether this judge, who heard this 214-01 motion, abused his discretion in finding that a new trial would not result in a different outcome. Okay. I'm not sure that's any different than what I said. Because abuse of discretion means could a reasonable judge have reached the decision? It may. But I have one other question before we run out of time. You referenced in your brief a purported confession in 2009 to a jailhouse snitch. The reply brief says that it was improper for you to have brought that to this court's attention because the trial court below did not consider it, therefore, is not part of the record. That was on page 19. Is she correct? I would admit error with that part. It was stated that it was subsequently brought to my attention that the trial court even specifically stated it was not part of the record. So I apologize for the error on that part. I would like to just address just a couple of other things. First of all, it was mentioned today that there was evidence of the window in a bathroom being broken. That evidence was in the first trial. It was not introduced in the second trial. And this issue is to look at the DNA evidence in light of the evidence of the second trial. That was not part of it. There was also much mentioned about the fact that Donald was trying to protect himself and that he was a suspect. If he really wanted to protect himself, once the family had gone through the home and not found the child and had left, why in the world would he go out there and direct them all to come back in to say he found the child? If he was trying to protect himself, if he was trying to protect somebody who apparently or supposedly could have been a close friend of his, that makes no sense to me at all. If that's the case, he had just gotten away with it because the family searched the house. They would testify. We searched the house. We didn't find the child. It makes no sense. He came out. They testified. He was so upset he dropped his glass that he was holding. It shattered everywhere. He was visibly upset. And then he led the police in to find the child. So that's just, the evidence doesn't suggest that that's a possibility for his behavior. Again, based on the facts. He didn't lead the police in, did he? He led the stepfather back in. He led the stepfather in and then he led the police to defend it. Again, based on the balancing, the state would suggest the trial court did not use its discretion. Thank you. Thank you very much. Rebuttal, please. Your Honor, our DNA evidence cannot be explained away. Donald Duro is difficult, but it's not impossible to explain him away. It's our position Donald Duro is lying. He is one witness and he is lying. He seemed to have information that only the killer would know. Namely, that someone knocked on the Tucker's door. This information could have come from Maurice Tucker. Donald Duro's whereabouts were unaccounted for from the hours of about 6 o'clock until 8 o'clock. The information could have come from the Spragues. Donald Duro had a conversation with the Spragues at the time that they were all searching for the child. Again, this is an issue for the jury to sort out. As I said, he's one witness and he had a motive to lie. With regards to statements that were made to law enforcement officers, Mr. Davis' statement to Officer Porter that he did not rape a little white girl does not necessarily show guilty knowledge. There is evidence in the record that before Davis made this statement, he had been told what he was being arrested for and that was raping a little white girl. And then Officer Porter asked him, how old is this little girl? And he says, ages 5 to 7. And to me that's evidence of actual innocence. If he knew that they were talking about Breonna Stickle, he would have said ages 2 or 3. With regards to the standard of review, again, it is my position that you do not have to court any deference at all to Judge Leonard's opinion in this case and his decision in this case. You are in the same position he was in, in reviewing the testimony of the witnesses who testified at the previous trials. You are in the same position. And I argued in my reply brief that the Paul case, the case the state relies on, is no longer good law in view of the rule announced in the Supreme Court decision of People v. Vincent. And that Vincent holds that the standard of review of a trial court's disposition of a Section 214.01 petition depends on the manner in which the petition was disposed. And again, Judge Leonard did not hear any witnesses testify. He did not have to make any credibility determinations. What he did was weigh the evidence. And that's the question before you. Would a jury find that this newly discovered DNA evidence had made a difference by ponderance of the evidence? That's the question. And... Well, we're back to the precise sentence. Would or probably would? Or does it make any difference? Is it likely to have caused the jury to reach a different decision? Is it probable? Is it reasonably probable? I think reasonably probable, likely, those mean the same thing. In this context. And again, I don't have to show that the jury 100% definitively would come back and say he's going to be acquitted. I have to show that there's a reasonable probability. And that's the question before you. And we're not asking this Court today to say that Andre Davis is innocent. I believe he is. I'm not asking you to do that. I'm asking that you afford him a new trial in light of this DNA evidence. Okay, thanks to both of you. The case is submitted and the Court stands in recess. Thank you very much.